


ENTERED
10/14/2008

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 08-32362-H4-11** |
| **WILL CLAY PERRY,** | § | |
| | § | |
| **Debtor.** | § | |

**MEMORANDUM OPINION ON DEBTOR'S MOTION TO ABANDON EAST AUDEN CIRCLE HOUSE IN FULL SATISFACTION OF CLAIMS**
[Docket No. 154]

## I. INTRODUCTION

Will Clay Perry (the Debtor) filed the Debtor's Motion to Abandon East Auden Circle House in Full Satisfaction of Claims (Motion to Abandon). [Docket No. 154.] Amegy Mortgage Company, L.L.C. (Amegy), a creditor in the Debtor's bankruptcy case, filed its Response in Opposition to the Debtor's Motion to Abandon (Response to the Debtor's Motion to Abandon). [Docket No. 184.]

This Memorandum Opinion will address whether in a motion, a debtor, as co-obligor on a note securing certain property, may abandon such property directly to a mortgagee in full satisfaction of that mortgagee's secured claim. Set forth below are the Court's written findings of fact and conclusions of law. The Court reserves its right to make additional findings of facts and conclusions of law as it deems appropriate or as may be requested by any of the parties.

## II. FINDINGS OF FACT

1. On April 11, 2008, the Debtor filed his voluntary petition under Chapter 11 of the Bankruptcy Code. [Docket No. 1.]

2. The Debtor is operating as a debtor-in-possession under 11 U.S.C. § 1107.

3. On February 14, 2007, the Debtor co-signed a balloon note to Amegy in the principal amount of $186,000.00 for purchase of a home located at 3906 East Auden Circle in Missouri City,

Texas (the Property). The other obligor on the note was Clark Woodcox, the Debtor's brother-in-law (Woodcox). The Debtor co-signed the note because Woodcox's credit history precluded him from obtaining the mortgage without a creditworthy co-signor. The Debtor and Woodcox also signed a deed of trust on the Property in favor of Amegy contemporaneously with their execution of the note. The mortgage payment on the note is $1,268.85 per month, subject to adjustment for late charges, costs, and expenses of enforcing the note and reimbursement of taxes, insurance, and other advances made by the lender pursuant to the Deed of Trust. [Docket No. 184-2.]

4. The Property has served as Woodcox's primary residence. Woodcox, has, until recently, been making the mortgage payments on the Property, paying the ad valorem property taxes on the Property, and maintaining appropriate insurance coverage for the Property. However, as of the date of this Opinion, Woodcox is in default by at least three months.

5. The Debtor lived in his own homestead with his wife, Laura Woodcox-Perry, and his children at 15 Steve Fuqua Place, Missouri City, Texas. The Debtor has now vacated the Steve Fuqua Place house and currently resides in a one-bedroom apartment; his wife and he are currently engaged in a very acrimonious divorce action. The Debtor has no desire to move into the Property with his brother-in-law.

6. According to Amegy's Proof of Claim No. 32, the value of the Property is $193,000.00. [Proof of Claim No. 32.]

7. According to the Debtor's Amended Schedule A, the value of the Debtor's nonpossessory interest in the Property is $100,000.00. [Docket No. 50.]

8. Amegy has filed a proof of claim in this case for the principal balance due under the note in the amount of $184,043.77, ad valorem taxes that it has paid in the amount of $5,480.36, and interest on the note at a rate of 7.25% per annum. In this proof of claim, Amegy sets forth that it has only a secured claim; it does not set forth any amount for an unsecured claim. Amegy has attached an addendum to the proof of claim setting forth that to the extent Amegy is oversecured, interest will continue to accrue postpetition. [Proof of Claim No. 32.]

9. On August 22, 2008, this Court held a hearing on the Debtor's Motion to Abandon. No testimony or exhibits were introduced; only stipulations by and arguments of counsel were made. The Court took the matter under advisement.

## III. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (B), and (O). Venue is proper pursuant to 28 U.S.C. § 1408.

### B. Background of *Sandy Ridge* and the "Dirt for Debt" Concept

*In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346 (5th Cir. 1989), cited in support of the Debtor's Motion to Abandon, is a seminal "dirt for debt" case. *Sandy Ridge* held that in a plan, a debtor may transfer property directly to a secured creditor in full satisfaction of that creditor's secured claim as long as the transferred property is the "indubitable equivalent"of the claim.[1] The Fifth Circuit held that such an approach is permissible because, citing 11 U.S.C. § 1123(a)(5), "[a] plan may include

---

[1] The phrase "indubitable equivalent" is found in 11 U.S.C. § 1129(b)(2)(A)(iii) and most frequently appears in the context of a plan cramdown. In assessing whether a plan is fair and equitable to a class of secured claims where the plan's treatment of that class is to transfer property in satisfaction of the claims, the bankruptcy court must assess whether the holders of the secured claims will realize the indubitable equivalent of those secured claims. *Id.* at 1350.

a 'give-back' . . . . Section 1123(a)(5) allows the 'distribution of all or any part of property of the estate' to creditors." *Id.* at 1352.

**C. Relief requested in this case: May a debtor, in a motion, abandon property directly to the lienholder on the property in full satisfaction of the lienholder's secured claim?**

The first issue that this Court must address is whether a debtor may abandon property in full satisfaction of a secured claim outside the plan confirmation process. Stated differently, may a debtor abandon property directly to the holder of the lien on that property in full satisfaction of the lien through the filing of a motion to abandon?

When a voluntary bankruptcy petition is filed, all of the debtor's property becomes property of the estate. 11 U.S.C. § 541. Thus, in the case at bar, the Debtor's one-half interest in the Property is property of the estate. The Property continues to be property of the estate until it is transferred (i.e. sold), exempted, or abandoned. *See* 11 U.S.C. § 554(d). The Debtor has filed a Motion to Abandon, as opposed to having filed a plan containing a provision that provides for transfer of the Property through abandonment directly to Amegy.[2] While *Sandy Ridge* allows for the transfer of property in full satisfaction of a secured claim through the plan confirmation process, the Court here is unwilling to granted the relief requested by the Debtor because he has filed no plan proposing abandonment of the Property; and this Court has found no precedent for this relief to be granted by motion—at least not when the motion is opposed, as it is in this case.

In *Sandy Ridge*, the Fifth Circuit permitted the transfer of property through abandonment in a plan under the authority of 11 U.S.C. § 1123(a)(5). In the case at bar, however, there is no section of the Bankruptcy Code or Bankruptcy Rules that authorizes transfers of property by abandonment

[2] The Debtor has recently filed a proposed plan. [Docket No. 173.] However, this plan makes no reference to abandonment of the Property.

directly to the secured creditor through a motion alone. To grant such a motion over the secured creditor's objection would allow a debtor to accomplish a non-consensual transfer without the disclosure, voting, and other safeguards of Sections 1125 and 1129 required during plan confirmation. *See Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 939–40 (5th Cir. 1983); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226–27 (5th Cir. 1986); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715–16 (Bankr. W.D. Tex. 1989) ("[A] debtor [should not] be permitted to avoid the obligation to make full disclosure and to pass muster under Section 1129(a) by way of a 'creeping plan' via a series of sales, abandonments, or the like.").

The Bankruptcy Code permits an interested party to file a motion to abandon property that "is burdensome to the estate or that is of inconsequential value to the estate." 11 U.S.C. § 554(b). The Debtor, as an interested party, therefore has standing to file the Motion to Abandon. However, this Court concludes that the Property may not be abandoned by the Debtor's estate directly to Amegy because the Code contemplates that property is either (a) "abandoned to the debtor" when the case is closed; *See* 11 U.S.C. § 554(c);[3] or, if the case is not yet closed, (b) abandoned to no one in particular, leaving anyone who claims to have any interest in the property to take whatever action under applicable law they deem appropriate to protect their interest. Here, because the case is not closed, the Property can only be abandoned to no one in particular. Amegy, or anyone else asserting

---

[3] Congress knows how to use conveyancing terms if that is what is intended. 11 U.S.C. § 363 involves "sales" and § 365 involves "assignments." Those two concepts imply consensual transfers of ownership as to contracts and the like, not abandonment of real estate to a mortgagee in full satisfaction of its secured claim over that mortgagee's objection.

an interest in the Property, may proceed to initiate foreclosure proceedings, or take any other action to protect their interest, pursuant to applicable state law.[4]

Once the Property is abandoned, it is no longer property of the Debtor's estate. It follows, therefore, that because the Property no longer comprises part of the Debtor's estate, Amegy no longer has a secured claim against the estate. The only claim that Amegy could have against the Debtor's estate is an unsecured claim, which may be calculated by determining the value of the Property.

**D. Valuation of the Property and Amount of Amegy's Unsecured Claim, If Any**

In the pending case, there is a discrepancy as to the value of the estate's interest in the Property. The Court certainly has the power to determine the value of this interest. Under Bankruptcy Rule 3012, "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." Moreover, the Court has the power to determine Amegy's claim in the bankruptcy case "according to the equities of the case." 11 U.S.C. § 502(j); *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987); *Orix Capital Mkts., L.L.C. v. Mondona Rafizadeh (In re Cyrus II P'ship)*, 358 B.R. 311, 316 (Bankr. S.D. Tex. 2007).

Amegy's Proof of Claim No. 32 listed the Property at a value of $193,000.00. [Finding of Fact No. 6.] The Debtor listed the value of his interest in the Property at $100,000.00 on his Schedule A. [Finding of Fact No. 7.] At the hearing, both Amegy and the Debtor chose not to introduce any evidence about this value. [Finding of Fact No. 9.] Absent any testimony or exhibits (such as an appraisal), the only reasonable inference that this Court can make is that, according to

---

[4] So that there is no question that Amegy will not be in violation of the stay if it proceeds to foreclose its lien on the Property, this Court, out of an abundance of caution, will include a provision in the Order regarding the Motion to Abandon which expressly lifts the automatic stay.

the Debtor, the value of the entire Property is $200,000.00 (i.e. the Debtor's $100,000.00 one-half interest doubled equals $200,000.00). Thus, the value of the entire Property according to Amegy is $193,000.00 whereas the Debtor estimates the Property's value is $200,000.00.

The Court resolves this minimal value discrepancy by taking the average of the two Property values submitted by Amegy and the Debtor. In bankruptcy cases, the schedules filed by debtors and the proofs of claims filed by creditors are judicial admissions. *Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 780 (S.D. Tex. 2007) (citing *Larson v. Groos Bank, N.A.*, 204 B.R. 500, 502 (W.D. Tex. 1996)); *In re Basin Res. Corp.*, 182 B.R. 489, 492–93 (Bankr. N.D. Tex. 1995). As such, those judicial admissions can be used against each party. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *Larson*, 204 B.R. at 502. Based upon the judicial admissions of each party as to the value of the Property, the Court takes the average of the two Property values given to reach a value of $196,500.00 ($193,000.00 plus $200,000.00, divided by 2 equals $196,500.00).

Based upon these calculations, Amegy does not have an unsecured claim against the Debtor's estate. According to Amegy's proof of claim, Amegy's total claim includes the principal balance due under the note ($184,043.77), ad valorem taxes that Amegy has paid ($5,480.36), and interest on the note at a rate of 7.25% per annum. [Finding of Fact No. 8.] The value of the Property—$196,500.00—exceeds Amegy's total claim of $189,524.13 by over $6,500.00, thereby leaving Amegy with no unsecured claim.

The Court wants to emphasize that its conclusion that Amegy has no unsecured claim is subject to change if Amegy decides to foreclose in the wake of abandonment of the Property. Because this Court believes that the estate's interest in the Property may not be directly abandoned to Amegy in full satisfaction of Amegy's claim, Amegy has the right to foreclose its lien pursuant

to applicable Texas law. The Court will afford Amegy the opportunity to do so. If Amegy decides to avail itself of this opportunity, then its unsecured claim will be determined by the results of the foreclosure sale—as long as Amegy conducts the sale pursuant to applicable Texas law. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) (holding that so long as the lienholder complies with state law in holding a foreclosure sale, then the sale is valid and the amount received at the sale is a fair and proper price). For example, if Amegy conducts a valid foreclosure sale under Texas law and the winning bid for the entire Property is $150,000.00, then Amegy's unsecured claim will be $39,524.14, which is calculated as follows: amount of Amegy's total claim in this case (i.e. $189,524.13) minus $150,000.00 equals $39,524.13.[5]

Amegy will not, however, have the luxury of foreclosing whenever it so chooses. This Court has a duty to ensure that its cases, including this case, are prosecuted timely and fairly, taking into consideration the interests of all creditors, all parties-in-interest, and the Debtor. Accordingly, Amegy will have 120 days to conduct a foreclosure sale on the Property. If it does not do so, then Amegy's unsecured claim will be set at zero based upon the finding that the value of the Property at this time is $196,500.00. This zero figure will be used for claims estimation and voting purposes

[5] Although this Court used the judicial admissions of Amegy and the Debtor to make a finding that the value of the Property is presently $196,500.00, this value is only for purposes of this specific contested matter and does "'not have a *res judicata* effect' on subsequent hearings." *In re Snowshoe Co.*, 789 F.2d 1085, 1088–89 (4th Cir. 1986) (quoting S.Rep. No. 95-989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840). Indeed, courts have recognized that the value of collateral may change between the time a claim is allowed or filed and the time that a foreclosure sale is held. *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). Thus, if Amegy holds a valid foreclosure sale and the highest bid is $150,000.00, there is no reason why this Court could not re-value the Property at $150,000.00 so as to allow Amegy to have an unsecured claim of $39,524.13. As one court has stated, "a bankruptcy court faced with the need to re-value collateral should not 'mechanically appl[y] the valuation determination in the earlier proceeding,' but should make an independent evaluation of the value of the collateral." *Snowshoe*, 789 F.2d at 1089; *see also In re Midway Partners*, 995 F.2d 490, 494 (4th Cir. 1993).

in the plan confirmation process. Thereafter, if Amegy forecloses and the bid price is less than $189,524.13, then Amegy may amend its proof of claim setting forth that it has an unsecured claim for the amount of the deficiency. The amount of the deficiency will establish the amount of Amegy's unsecured claim for purposes of distribution in this case.[6]

## IV. CONCLUSION

Because the Fifth Circuit has held that liened property may be abandoned by the estate directly to the mortgagee in full satisfaction of its secured claim only through confirmation of a plan, this Court is unwilling to grant all of the relief requested by the Debtor in the Motion to Abandon. Rather, this Court will allow the Debtor to abandon the Property, but Amegy will be allowed to foreclose its lien on the Property and thereafter amend its proof of claim setting forth that it has an unsecured claim for the amount of the deficiency, if any.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 14th day of October, 2008.

Jeff Bohm
United States Bankruptcy Judge

---

[6] The Debtor will have the right to challenge any amended proof of claim pursuant to applicable law.