property that was not extinguished by the foreclosure, exceeds the sale price." Tex. Prop. Code Ann. § 51.003(c) (Vernon 2009). "Competent evidence of value may include: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cash flow generated by the property to arrive at a current fair market value." *Id.* § 51.003(b).

The Court has been given three credible data points for the fair market value of the Hidden Lakes Property: (1) Osenbaugh's expert testimony that the value of the property is approximately $12,000,000.00 [November 11, 2009 Tr. 75:19–76:2]; (2) Moayedi's testimony regarding the marketing and holding costs for the Hidden Lakes Property, as well as his testimony regarding whether he, as the agent for CTMGT, would have paid $2,100,000.00 for the Hidden Lakes Property had he known about the Hidden Lakes Lawsuit [November 11, 2009 Tr. 132:19–137:23]; and (3) the sum of the sale price at the foreclosure sale (approximately $2,100,000.00) and the amount of the unextinguished debt to RBC secured by the Hidden Lakes Property on the date of the sale (approximately $6,700,000.00)– a total of approximately $8,800,000.00. [Finding of Fact No. 24.]

Moayedi's testimony indicates that the Hidden Lakes Property will require substantial marketing time and holding costs: the Hidden Lakes Lawsuit will probably have to be resolved before homebuilders are likely to sign on to build on the property, and an amenity center still remains to be built on the property (costing an estimated $1,000,000.00). [November 11, 2009 Tr. 132:19–137:23]. Mr. Moayedi also testified, in his capacity as agent of the purchaser CTMGT, that CTMGT would not have paid $2,100,000.00 for the Hidden Lakes Property if it

had known the full extent of the legal dispute over drainage and the artificial lake on the property. *Id.*

The Court finds both Osenbaugh and Moayedi to be credible, though it finds Osenbaugh's testimony somewhat less credible due to Osenbaugh's heavy reliance on property values from 2007 in her method of calculating the value of the Hidden Lakes Property. Osenbaugh asserts that the value of Hidden Lakes is approximately $2,200,00.00 greater than the value for the property based on the sale price and the debt secured by the property. On the other hand, Moayedi asserts that, had he been aware of the pending lawsuit relating to the Hidden Lakes Property, he would have valued the property at less than what the sale price would indicate. How much less is not clear from the record.

On the facts before it, the Court is inclined to find that $8,800,000.00 is an accurate assessment of the fair market value of the Hidden Lakes Property. There is credible testimony indicating that the fair market value could be either higher or lower; thus, $8,800,000.00 appears to be a sensible midpoint value that is supported by the compelling fact that it is the amount a party was actually willing to pay for it.

Accordingly, the Court finds that there is no setoff for Perry to have in relation to the foreclosure sale of the Hidden Lakes Property. As a result, the Court discounts UDF's claims by $0 based on the 15% probability of reaching a different result in a full trial (*i.e.*, $0 (setoff due to Perry) x 15% (probability of reaching a different result) = $0).

**In conclusion, the Court estimates that UDF has a claim of $1,964,176.62 under the Hidden Lakes/UDF Note [Exhibit No. 28]**. The results of this analysis are summarized in Table 9, below:

**Table 9**

| **Note** | **Claim before discount** | **Discount based on probability of reaching a different result in a full trial on the merits** | **Net Claim Under the Note** |
|---|---|---|---|
| **Hidden Lakes/UDF** | $1,964,176.62 | $0 | **$1,964,176.62** |

## V. CONCLUSION

**In sum, for purposes of any plan confirmation hearing held in this case, the Court estimates that UDF III has a total claim of $5,555,838.77, and that UDF has a total claim of $1,964,176.62. Both of these claims are unsecured claims.**

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 24th day of February, 2010.

Jeff Bohm
United States Bankruptcy Judge